1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                   EASTERN DISTRICT OF WASHINGTON

8   DEBRA RENTZ and BILLIE           )
    RENTZ, as co-personal            )
9   representatives of the ESTATE OF )
    CHRISTOPHER L. RENTZ,            )
10  et al.,                          )
                                     )
11              Plaintiffs,          )      No. CV-05-83-AAM
                                     )
12  and                              )
                                     )   **ORDER GRANTING**
13  WILLIAM RENTZ, in his            )   **MOTION FOR PARTIAL**
    individual capacity,             )   **SUMMARY JUDGMENT,**
14                                   )   **IN PART,** *INTER ALIA*
                Plaintiff-Intervenor,)
15                                   )
                vs.                  )
16                                   )
                                     )
17  SPOKANE COUNTY, et al.,          )
                                     )
18                                   )
                                     )
19              Defendants.          )
    ─────────────────────────────   )
20
21          **BEFORE THE COURT** are Defendants' Motion For Partial Summary

22  Judgment (Ct. Rec. 47), Plaintiffs' Joint Motion To Amend Complaint (Ct. Rec.

23  66), and Plaintiffs' Joint Motion To Continue Trial (Ct. Rec. 63).

24          The motion for partial summary judgment was heard with oral argument on

25  June 20, 2006.  Julian E. St. Marie, Esq., argued on behalf of Plaintiffs and

26
27
28

**ORDER GRANTING SUMMARY**
**JUDGMENT, IN PART,** *INTER ALIA-*    **1**

1  Plaintiff-Intervenor.[1]  Heather Yakely, Esq., argued on behalf of Defendants.
2  The Joint Motion To Amend Complaint (Ct. Rec. 66) and the Joint Motion To
3  Continue Trial (Ct. Rec. 63) were considered without oral argument.
4
5  **I. BACKGROUND**
6      Christopher L. Rentz was being held as a pre-trial detainee in the Spokane
7  County Jail when on October 2, 2004, he was murdered by two fellow pre-trial
8  detainees.
9      Plaintiffs Debra Rentz and Billie Rentz, as co-personal representatives of the
10 Estate of Christopher L. Rentz, seek recovery of damages under Washington's
11 wrongful death and survival statutes for violation of the federal constitutional
12 rights of Christopher L. Rentz (the "decedent").[2]  Debra Rentz and William Rentz,
13 parents of the decedent, and Billie Rentz and Thomas Gregg,  siblings of the
14 decedent, are designated beneficiaries under the wrongful death and survival
15 statutes.
16     Debra Rentz, William Rentz, Billie Rentz, and Thomas Gregg, also seek
17 recovery of damages for violation of their own federal constitutional rights for loss
18 of association with their son and brother.
19     William Rentz also seeks recovery of damages based on common law claims
20 of outrage and negligent infliction of emotional distress.
21     When they first filed their motion, defendants sought summary judgment on
22 all  of the wrongful death causes of action asserted pursuant to state law because of
23
24 ────────────────
25     [1] Unless otherwise specified, reference to "plaintiffs" herein includes both
   "Plaintiffs" and "Plaintiff-Intervenor."
26
27     [2] The State has an affirmative duty to protect when it incarcerates or
   involuntarily institutionalizes a person.  *DeShaney v. Winnebago County*
28 *Department of Social Services*, 489 U.S. 189, 199-200, 109  S.Ct. 998 (1989).

**ORDER GRANTING SUMMARY
JUDGMENT, IN PART, *INTER ALIA*-    2**

a lack of evidence that Debra Rentz, William Rentz, Billie Rentz and Thomas Gregg were financially dependent upon the decedent at the time of his death. Defendants also sought summary judgment on the Eighth Amendment cause of action asserted on behalf of decedent, due to the fact he was a pre-trial detainee and had not been convicted. In their response brief, the plaintiffs did not dispute that they were not financially dependent upon the decedent. They asserted, however, that this did not preclude recovery of damages for wrongful death under 42 U.S.C. §1983 which borrows Washington's wrongful death statutes.

In their reply brief, the defendants asserted that not only is recovery precluded for the wrongful death cause of action brought pursuant to state law, but that it is also precluded under federal law. Furthermore, defendants asserted that Debra Rentz, William Rentz, Billie Rentz, and Thomas Gregg are precluded from recovery under federal law for loss of association with their son and brother.

Because the defendants' reply brief expanded the scope of the summary judgment sought by defendants, the court granted the plaintiffs leave to file a supplemental brief so that it would be fair and proper to consider the expanded scope of relief sought by defendants.

On the same date that defendants' reply brief was filed with the court (June 6), plaintiffs filed their Joint Motion To Amend Complaint and Joint Motion To Continue Trial.

## II. JOINT MOTIONS TO AMEND COMPLAINT AND CONTINUE TRIAL

Plaintiffs seek to add four individuals (Spokane County Jail Officers Grooms, Mason and Foo; Spokane County Jail Nurse Judith Erickson) and Spokane County Mental Health as defendants. According to plaintiffs, the involvement of these individuals in the placement of decedent in the same jail dormitory as the individuals who murdered him came to light during depositions which have been conducted, including one of Judith Erickson that was conducted

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    3**

on April 25, 2006.  Plaintiffs contend the trial should be continued because of the additional discovery that will need to be conducted with regard to the additional defendants.

The proposed amended complaint would drop the Eighth Amendment cause of action asserted on behalf of a decedent, a concession that recovery under the Eighth Amendment for failure to protect is not possible since the decedent was a pre-trial detainee and not a convict.  *Graham v. Connor*, 490 U.S. 386, 393 & n. 6, 109 S.Ct. 1865 (1989).

The defendants contend that adding the individual county defendants (Grooms, Mason, Foo and Erickson) is pointless because Spokane County has not alleged that any of its employees acted outside the scope and course of their employment with regard to the events surrounding the death of Christopher L. Rentz.  It is not pointless.  Plaintiffs propose to assert constitutional claims against these new defendants in their personal ("individual") capacities, as well as their official ("representative") capacities, seeking to hold them personally responsible for their alleged actions and/or omissions related to the death of the decedent.  All of the named defendants in the current complaint are sued in both their "individual" and "representative" capacities.  When a plaintiff names an official in his individual capacity, he is seeking  "to impose personal liability upon a government official for actions he [or she] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985).  When a plaintiff names a government official in his official capacity, the plaintiff is seeking compensatory damages from the government body itself and this requires proof that an official policy or custom is the cause of the constitutional violation.    *Id*. at 165-66.  Punitive damages are available only against individual defendants for actions taken under color of state law in their individual capacity. *Smith v. Wade*, 461 U.S. 30, 56, 103  S.Ct. 1625 (1983).

Defendants contend proposed new defendant Spokane County Mental

**ORDER GRANTING SUMMARY JUDGMENT, IN PART,** *INTER ALIA***-    4**

1  Health is prejudiced because it does not know about the proposed amended

2  complaint and has not had an opportunity to object.[3]  Of course, Spokane County

3  Mental Health does not have notice because it is not yet a named defendant.  That

4  does not, however, preclude the court from allowing it to be named as such.  Once

5  named and served with an amended complaint, it can assert appropriate defenses.

6         Defendants contend the plaintiffs' proposed amended complaint also has an

7  improper purpose in that it seeks to circumvent the summary judgment sought by

8  defendants.  To the extent the proposed amended complaint alleges wrongful death

9  causes of action under state law, those causes of action remain subject to summary

10  judgment, as discussed *infra*, because there is no dispute that the parents and

11  siblings of decedent were not financially dependent upon him at the time of his

12  death.  Furthermore, allowing an amended complaint which drops the Eighth

13  Amendment cause of action effectively achieves the same result as the summary

14  judgment sought by defendants with regard to that cause of action.  The "Joint

15  Motion To Amend Complaint" does not circumvent the summary judgment motion

16  filed by defendants.  Nor does it circumvent the expanded scope of summary

17  judgment relief sought by defendants via their reply brief.

18         Defendants contend the proposed amended complaint sets forth new causes

19

20

21  [3] Paragraph 1.18 of the "proposed" amended complaint alleges:

22         Spokane County and Spokane County Jail's duty to

23         provide for the health and safety of Christopher Rentz
       is non-delegable.  However, to the extent Defendants

24         attempt to place responsibility on Spokane Mental
       Health for any of the events, occurrences, acts and/or

25         omissions, SPOKANE MENTAL HEALTH is named

26         as a party by Plaintiffs, pursuant to Fed. R. Civ. P. 8(e)(2).
       SPOKANE MENTAL HEALTH is a non-profit

27         Washington corporation.

28

**ORDER GRANTING SUMMARY
JUDGMENT, IN PART, *INTER ALIA*-    5**

of action.  According to defendants, plaintiffs propose a new cause of action under 42 U.S.C. §1988.  §1988, however, is not a cause of action separate from §1983.  §1988  provides remedies for §1983 violations, including "borrowing" of state law to effectuate a remedy, as discussed *infra*.

   Defendants contend that plaintiffs have added causes of action on behalf of the decedent for loss of life and enjoyment of life, and deprivation of "constitutionally guaranteed bodily security and his right to life."  This additional language simply elaborates upon the Fourteenth Amendment substantive due process cause of action asserted on behalf of decedent as already set forth in the original complaint filed by plaintiffs, and the "Complaint in Intervention" filed by William Rentz.

   Defendants contend the proposed amended complaint alleges a new cause of action for Billie Rentz for "loss of companionship and association" and a new cause of action for Thomas Gregg for "loss of consortium and association."  The original complaint filed by plaintiffs, however, is clear that Billie Rentz and Thomas Gregg are asserting causes of action for violation of their Fourteenth Amendment substantive due process rights.

   It is true the original complaint filed by the plaintiffs and the "Complaint In Intervention" filed by William Rentz are not as clear about asserting wrongful death and survival actions for the benefit of decedent's estate and the beneficiaries designated under Washington's wrongful death and survival statutes.  The proposed amended complaint makes that clear and in doing so,  does not prejudice the defendants.  Furthermore, defendants are not prejudiced since the court is also granting the plaintiffs' "Joint Motion To Continue Trial."

   There being no bad faith or dilatory motive on the part of plaintiffs, and the defendants not suffering any prejudice, justice requires that plaintiffs be given leave to amend their complaints pursuant to Fed. R. Civ. P. 15(a).  Plaintiffs' "Joint Motion To Amend Complaint" (Ct. Rec.  66) is **GRANTED**.  Plaintiffs'

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    6**

"Second Joint Amended Complaint" (Ct. Rec. 77) will hereby serve as the complaint of record for all of the Plaintiffs, including Plaintiff-Intervenor. This complaint shall be served upon the new defendants in accordance with the Federal Rules of Civil Procedure.

Good cause appearing, Plaintiffs' "Joint Motion To Continue Trial" (Ct. Rec. 63), to which the Defendants have not registered any opposition, is **GRANTED**.  Plaintiffs appear to seek a new trial date sometime in 2007.  Within ten (10) days of the date of this order, counsel for the parties will serve and file with the court a paper indicating dates of availability for trial in 2007.

## III.  MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.  Wrongful Death and Survival Causes Of Action Under Washington State Law

At common law, no cause of action survived the death of an individual, nor was there a right of recovery for wrongful death.  The Washington State Legislature has passed statutes governing wrongful death and survival actions in certain circumstances. *Schumacher v. Williams*, 107 Wn. App. 793, 794, 28 P.3d 792 (2001).

Wrongful death actions in Washington are strictly statutory.  RCW 4.20.010 creates a right of action by the personal representative when a person's death is caused by a wrongful act, neglect, or default of another.  It provides:

> When the death of a person is caused by the wrongful act, neglect, or default of another, his personal representative may maintain an action for damages against the person causing the death; and although the death shall have been caused under such circumstances as amount, in law, to a felony.

Only certain persons, however, may benefit from the wrongful death action. RCW 4.20.020 provides in relevant part:

> Every such action shall be for the benefit of the wife, husband, child or children, including stepchildren, of the person whose death shall have been so caused.  **If there be no wife or husband**

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    7**

**or such child or children, such action may be maintained for the benefit of the parents, sisters or brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death.**

(Emphasis added).

The statute establishes two tiers of beneficiaries on whose behalf a wrongful death action may be maintained. The first tier of beneficiaries includes the spouse and the children of the deceased. It is unnecessary for these beneficiaries to establish financial dependence on the deceased. The second tier, including parents and siblings of the deceased, may recover only if there are no first tier beneficiaries and only if the designated beneficiaries were dependent on the deceased for support. *Schumacher*, 107 Wn. App. at 795.

Washington's wrongful death statutes, RCW 4.20.010 and 4.20.020, create causes of action for specific surviving beneficiaries of the deceased. Wrongful death causes of action begin at the death of the decedent for the benefit of the persons named in the statute. Wrongful death statutes govern post-death damages of the deceased. *Otani v. Broudy*, 151 Wn.2d 750, 755, 92 P.3d 192 (2004). Elements of damages include loss of love, affection, care, service, companionship, society, training and  consortium that decedent would have provided to the beneficiaries. *Chapple v. Granger*, 851 F.Supp. 1481, 1487 (E.D. Wash. 1994).[4]

Unlike the wrongful death statutes, Washington's survival statutes do not create new causes of action for statutorily named beneficiaries, but instead preserve causes of action that the decedent could have brought had he or she survived. The survival statutes preserve causes of action for injuries suffered prior to death. The

---

[4] Under RCW 4.20.010, the personal representative of the decedent's estate may maintain an action for damages against the tortfeasors to recover the value of the pecuniary interest lost as a result of the wrongful death. Pecuniary loss includes not only the monetary contributions the decedent would have made to the beneficiaries, but also intangible losses. *Chapple*, 851 F.Supp. at 1487.

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    8**

purpose of awarding damages under the survival statutes, RCW 4.20.046 and RCW 4.20.060, is to remedy the common law anomaly which allowed tort victims to sue if they survived, but barred their claims if they died. *Otani*, 151 Wn.2d at 755.

The general survival statute, RCW 4.20.046(1), provides in relevant part:

> All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter, whether such actions arise on contract or otherwise, and whether or not such actions would have survived at the common law or prior to the date of enactment of this section: PROVIDED, HOWEVER, That the personal representative shall only be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased **on behalf of those beneficiaries enumerated in RCW 4.20.020**, and such damages are recoverable regardless of whether or not the death was occasioned by the injury that is the basis for the action.

(Emphasis added).

The general survival statute preserves all causes of action that a decedent could have brought if he or she survived.

The special survival statute, RCW 4.20.060, provides:

> No action for personal injury to any person occasioning death shall abate, nor shall such right of action determine, by reason of such death, if such person has a surviving spouse or child living, including stepchildren, or leaving no surviving spouse or such children, **if there is dependent upon the deceased for support and resident within the United States at the time of decedent's death, parents, sisters or brothers**; but such action may be prosecuted, or commenced and prosecuted, by the executor or administrator of the deceased, in favor of such surviving spouse, or in favor of the surviving spouse and such children, or if no surviving spouse, in favor of such child or children, or if no surviving spouse or such child or children, **then in favor of decedent's parents, sisters or brothers who may be dependent upon such person for support, and resident in the United States at the time of decedent's death.**

(Emphasis added).

The special survival statute is limited to personal injury causes of action that result in death. It does not create new causes of action, but preserves personal

**ORDER GRANTING SUMMARY JUDGMENT, IN PART,** *INTER ALIA-*    **9**

1    injury causes of action the decedent could have brought had he or she survived.

2        Recovery under the general survival statute is for the benefit of, and passes

3    through the decedent's estate.  Recovery under the special survival statute is for the

4    benefit of, and is distributed directly to, the statutory beneficiaries.  *Otani*, 151 Wn.

5    2d at 755-56 and n. 3.[5]

6        "Washington's four interrelated statutory causes of action for wrongful

7    death and survival each require that parents be 'dependent for support' on a

8    deceased adult child in order to recover."  *Phillippides v. Bernard*, 151 Wn.2d 376,

9    386, 88 P.3d 939 (2004).[6]  Likewise, siblings must be "dependent for support" on a

10   deceased sibling in order to recover.

11       Because the parents and siblings of decedent acknowledge they were not

12   financially dependent upon him, defendants are entitled to summary judgment on

13   any wrongful death and survival causes of action asserted under Washington state

14   law.

---

18   [5] Damages recoverable in a survival action include medical and hospital
19   expenses, funeral expenses, property damage, and pain, suffering, and fear
     experienced by the decedent ("those damages recoverable in a garden variety tort
20   action").  *Chapple*, 851 F.Supp. at 1486.

21   [6]  See also 4.24.010 "Action For Injury Or Death Of Child," which provides
22   in relevant part:

24           A mother or father, or both, who has regularly contributed
             to the support of his or her minor child, **and the mother or**
25           **father, or both, of a child on whom either, or both, are**
             **dependent for support may maintain or join as a party**
26           **an action as plaintiff for the injury or death of the child.**

28   (Emphasis added).

**ORDER GRANTING SUMMARY**
**JUDGMENT, IN PART, *INTER ALIA*-    10**

1
2

**B.  Wrongful Death and Survival Causes Of Action Under 42 U.S.C.
§1983**

3       Where §1983 does not provide suitable remedies for constitutional
4  violations, the federal courts are instructed to turn to state law "so far as the same
5  is not inconsistent with the Constitution and laws of the United States."   42 U.S.C.
6  §1988(a).  In *Robertson v. Wegman*, 436 U.S. 584, 594, 98 S.Ct. 1991 (1978), the
7  Supreme Court held that state law on survivorship of causes of action should
8  control so long as that state law is not generally "inhospitable to survival of §1983
9  actions . . . [and] has no adverse effect on the policies underlying §1983."  The
10  Supreme Court, however, has still not resolved the issue of whether wrongful death
11  causes of action may be pursued under §1983.  Nevertheless, "[c]onfronted with
12  standing problems, federal courts have 'borrowed' the wrongful death remedy as
13  well as the survival remedy from state statutes under the vehicle of 42 U.S.C.
14  §1988, declining to apply state limitations on recovery if necessary to fairly
15  compensate victims of constitutional deprivations and to deter police misconduct."
16  *Davis v. City of Ellensburg*, 651 F.Supp. 1248, 1253 (E.D. Wash. 1987), citing
17  *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961), and *Bell v. City of Milwaukee*, 746
18  F.2d 1205, 1238 (7th Cir. 1984), among other cases.

19       In *Davis*,  recovery was sought under §1983 for the alleged wrongful death
20  of an individual at the hands of the Ellensburg police.  Observing that §1983 is
21  silent on the issues of survivability of a decedent's constitutional claims, recovery
22  for wrongful death and the appropriate measure of damages, the Honorable Justin
23  L. Quackenbush looked to Washington's wrongful death and survival statutes.  651
24  F.Supp. at 1255.  The defendants argued that recovery for wrongful death was not
25  possible  because the decedent's parents were not financially dependent upon the
26  decedent as required under Washington's wrongful death and survival statutes
27  (RCW 4.20.020, RCW 4.20.060 and RCW 4.24.010).  Judge Quackenbush
28  disagreed:

**ORDER GRANTING SUMMARY
JUDGMENT, IN PART, *INTER ALIA*-    11**

Washington's wrongful death statutes provide that an action shall be for the benefit of a spouse or child of a decedent, but if there is no spouse or child . . . the action may be maintained for the benefit of dependent parents. RCW 4.20.020.  The action must be brought by a personal representative on behalf of these statutory beneficiaries, RCW 4.20.010, which has been done [in this case].  While recognizing that the statutes' dependency requirement "serves a double purpose in that its satisfaction establishes the necessary proof on the damage issue" [citation omitted], the underlying purposes of the state statute do not necessarily control and correspond to the purposes of §1983.  "Regardless of the law applied in a particular case, it is clear that the ultimate rule adopted under §1983 be a federal rule responsive to the need which arises whenever a federal right is impaired." [*Robertson v. Wegman*, 436 U.S. 584, 588, 98 S.Ct. 1991(1978)]. The independent vitality of §1983 has been reaffirmed many times by the Supreme Court. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

These considerations lead the court to hold that the wrongful death action brought on behalf of the decedent's parents is not barred by the failure of plaintiffs to allege dependency, and that the limitations imposed by the statute are inconsistent with the purposes of §1983.  The goals of deterrence, compensation and federal supremacy require that defendants' motion to dismiss, and for summary judgment, on the basis of lack of standing under the state wrongful death statute be denied.

*Id.* at 1257.

In the case at bar, defendants ask this court to overrule *Davis* because the "premier" case upon which it relied, *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), has been overruled, and "there is no need for this Court to craft a remedy as Plaintiffs have some claim which survive[s] to carry out the public policies behind §1983."

The financial dependency requirement applies to both wrongful death and survival actions.  It appears the defendants do not dispute the propriety of lifting that requirement for the purpose of allowing the survival action to proceed in the instant case to vindicate any violation of decedent's constitutional rights. This

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    12**

court agrees that is appropriate and in furtherance of the goals of §1983.[7]   Under Washington's general survival statute, decedent's estate is the beneficiary, while under the special survival statute, decedent's parents and siblings will be the beneficiaries.

Like a survival action, a wrongful death action also seeks to vindicate the federal constitutional rights of a decedent, although, as discussed above, it does so in a different manner.  In *Davis*, Judge Quackenbush found the parents of the decedent had standing under Washington's wrongful death statutes to recover, through the personal representative of the decedent's estate, for their injuries arising out of the death of their son.  This led him to pass on the question of whether the parents' own constitutional rights had been violated.  In a footnote, Judge Quackenbush stated  that because "the limitations in the state statutes are inapplicable in this case, it is not necessary to reach the constitutional issue" of whether the parents had causes of action in their own right for violation of a liberty interest in the companionship, care, custody and management of their child.  651 F.Supp. at 1257, n.1.[8]

---

[7]  The decedent left no surviving spouse or child who could prosecute a survival action on his behalf without needing to meet the financial dependency requirement.  "[I]t defies history to conclude that Congress purposely meant to assure the living freedom from . . . unconstitutional deprivations, but that, with like precision, it meant to withdraw the civil rights statutes against the peril of death." *Brazier*, 292 F.2d at 404-05, 408.  "The inescapable conclusion is that there may be substantial deterrent effect to conduct that results in the injury of an individual but virtually no deterrent to conduct that kills the victim."  *Davis*, 651 F.Supp. at 1256.

[8] It appears this was because the wrongful death remedy would make the parents "whole."  Their loss of consortium would be reimbursed as an element of damages in the wrongful death action for vindication of their son's constitutional

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    13**

In *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992), the mother of a pretrial detainee who committed suicide brought an action against the county under §1983 and state law. The Fifth Circuit Court of Appeals held:

> Under *Brazier* . . . Rhyne has standing to recover for her own injuries arising out of the wrongful death of her son. There is no dispute that Rhyne is within the class of people entitled to recover under Texas law for the wrongful death of a child. [Citation omitted]. [*Brazier* holds that] §1988 incorporates this wrongful death remedy into §1983, allowing Rhyne to recover under §1983 for her own injuries **resulting from the deprivation of her son's constitutional rights**.

(Emphasis added).

The county contended that Rhyne could not have standing unless she proved that the county intended to deprive her of familial association with her son in adopting those policies that led to her son's death. The Fifth Circuit's response was:

> We recognize the strength of the argument that, unlike survival statutes, wrongful death statutes arguably create new cause of actions and therefore ought not to be incorporated by §1988. [Citations omitted].[9] **We also acknowledge that allowing suit by the parent in her own right is not an inevitable companion of a wrongful death statute. At the same time, Texas wrongful death law provides Rhyne with the right to recover for her son's wrongful death and she can recover for injury to herself caused by her son's death. <u>To be more precise, our decisions allow recovery by Rhyne for her injury caused by the state's deprivation of her son's constitutionally secured liberty interests.</u>**

(Emphasis added). *See also Carringer v. Rodgers*, 331 F.3d 844, 850 (11th Cir. 2003), citing *Rhyne*, and finding that "where the spouse-murderer is precluded

---

right and so it was unnecessary to have it reimbursed through an action for vindication of their own constitutional rights.

[9] In *Davis*, Judge Quackenbush found the fact that RCW 4.20.010-020 and 4.24.010 created new and original causes of action was not preclusive of their invocation as shown by the practice of many courts in "borrowing" the wrongful death cause of action from state law. 651 F.Supp. at 1256.

**ORDER GRANTING SUMMARY JUDGMENT, IN PART,** *INTER ALIA-* **    14**

1   from recovery, Carringer, as parent, has standing to assert a §1983 claim for the

2   wrongful death of her son in violation of **his** constitutional rights")(Emphasis

3   added).[10]

4        In *Robertson v. Hecksel*, 420 F.3d 1254 (11th Cir. 2005), the Eleventh Circuit

5   further elaborated upon the distinction between a parent seeking to vindicate his or

6   her own constitutional rights, as opposed to vindicating the constitutional rights of

7   his or her deceased child.  In *Robertson*, the plaintiff's adult son was killed by a

8   police officer during a traffic stop.  As a result of his death, the plaintiff argued she

9   suffered a deprivation of her constitutionally protected liberty interest in a

10  continued relationship with her son.  The Eleventh Circuit held she did not have

11  such a protected liberty interest and affirmed dismissal of her Fourteenth

12  Amendment substantive due process claim.  *Id.* at 1255.  In doing so, the circuit

13  explained why *Brazier* and *Carringer*, cited *supra*, were not relevant to the

14  plaintiff's claim:

15           *Brazier* and *Carringer* were both instances were state
             law was used to fill the gaps in federal law through
16           §1988's borrowing provision. [Plaintiff] would have us
             also look to state law through §1988's borrowing
17           provision to decide her case.  Her argument misses the
             dispositive difference between *Brazier* and *Carringer*
18           and our case.  In those cases, the plaintiffs were seeking
             vindication of the **decedent's** rights under §1983.  Here,
19           plaintiff alleges a violation of **her** rights.  Regardless of
             whose rights are being asserted, before §1983 and §1988
20           can come into play, the plaintiff must still establish the
             existence of a federal right.  Because [plaintiff] has failed
21           to establish a federal right, we never reach §1983, let
             alone §1988 and state law.

22

23  *Id.* at 1261 (emphasis in text).

24       The Eleventh Circuit went on to add:

25  _____

26       [10] The 11th Circuit was formed after splitting from the 5th Circuit, but still
     considers 5th Circuit decisions rendered before October 1, 1981 (the date of the
27   split) as binding precedent.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th
     Cir. 1981).  *Brazier* is one of those decisions.
28

**ORDER GRANTING SUMMARY
JUDGMENT, IN PART,** *INTER ALIA*-    **15**

The plaintiffs in *Brazier* and *Carringer* passed the first hurdle of bringing a §1983 suit– identifying a federal right– by relying on the rights of the decedent. [Citation omitted]. In essence, they were bringing wrongful death suits under federal law.  Although the survivors' claims were separate from the claims of the decedents' estates, the *Brazier* and *Carringer* plaintiffs' claims necessarily required a finding that the decedents' deaths were wrongful in some way. **Conversely, whether the decedent's rights in our case were violated has no bearing on the ability of his mother to argue a loss of companionship, because her alleged cause of action is based on a violation of rights personal to her, not rights personal to the defendant.**  For that reason, *Brazier* and *Carringer* are not controlling.

*Id*. at 1261-62 (emphasis added).

In *Carringer*, the Eleventh Circuit indicated there were at least four different theories used by circuit courts to determine what claims after death may proceed under §1983.  331 F.3d at 850, n. 9.  One theory, as espoused in *Brazier*, is that §1988 permits courts to "borrow" state wrongful death statutes to the extent they are consistent with §1983.   Another theory followed by circuits is the "constitutional approach" which is to allow a claimant to argue that he had a relationship with the deceased that was constitutionally protected and that the homicide of the decedent destroyed that relationship and therefore, violated the claimant's own protected constitutional rights.  *Bell* is an example of this "approach" (parent may assert constitutional claim for death of adult child, but siblings cannot sue under wrongful death theory), as is *Trujillo v. Bd. of County Comm.*, 768 F.2d 1186, 1189 (10th Cir. 1985)(recognizing constitutional claims by parents and siblings, but only when defendant intended to destroy constitutionally protected relationship).  Yet another theory or approach is that a parent simply does not have a liberty interest in the companionship of an adult child.  *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001).  And yet another theory adopted by some circuits is to permit recovery of the damages for the harm done to the decedent, but not for the harm to the survivor, even though both are permitted under state law.  *Andrews v. Neer*, 253 F.3d 1052, 1063-64 (8th Cir. 2001).

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    16**

In *Davis*, Judge Quackenbush did not employ a "constitutional approach" in determining that the parents of the decedent were entitled to recover under Washington's wrongful death statute. Judge Quackenbush cited *Bell* in support of his decision, but only insofar as being an example of cases in which federal courts had borrowed the wrongful death remedy from state statutes. Judge Quackenbush did not cite *Bell* for its "constitutional approach." At least in the Ninth Circuit, however, the "constitutional approach" would warrant such recovery, based in particular on decisions rendered after *Davis*. At the same time, it would not warrant recovery for the siblings. See discussion *infra*. The "constitutional approach" leads this court to conclude that recovery by decedent's parents under Washington's wrongful death statutes is appropriate to further the goals of §1983.[11]

## C. 42 U.S.C. §1983 Causes Of Action for Fourteenth Amendment Violations Brought By Parents and Siblings

### 1. Decedent's Parents

The Seventh Circuit Court of Appeals recently overturned *Bell* in *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005): "We therefore overrule our decision in *Bell* insofar as it recognized a constitutional right to recover for the loss of companionship of an adult child when that relationship is terminated as an incidental result of state action." It indicated the only circumstance in which a

---

[11] Even if the "constitutional approach" were not employed, this court would not allow decedents' siblings to recover as statutory beneficiaries of a wrongful death action, based on the rationale that the recovery by the parents as statutory beneficiaries of a wrongful death action would be sufficient enough to serve the goals of §1983, and that also allowing recovery by the siblings would not appreciably enhance service of those goals.

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    17**

constitutional right would arise is where there is intentional action by the state to purposefully interfere with a familial relationship. *Id*. at 790. "[F]inding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set by the Supreme Court." *Id*.

To date, however, the Ninth Circuit Court of Appeals is of a different mind. Defendants acknowledge they are asking this court, based on the decision of the Seventh Circuit in *Russ*, to hold contrary to Ninth Circuit precedent that parents of an adult child do not have a Fourteenth Amendment substantive due process right to the companionship of that child where deprivation of the right is incidental to the state action. In *Russ*, the Seventh Circuit noted:

> Several of our sister circuits have considered whether the Constitution protects a parent's relationship with his adult children in the context of state action which has the incidental effect of severing that relationship. No other court of which we are aware has allowed a parent to recover for the loss of his relationship with his child in these circumstances. Most courts that have considered the issue have expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed at specifically interfering with the relationship.

414 F.3d at 787.

The Seventh Circuit cited decisions from the First, Third, Fourth, Sixth and Tenth Circuits, but it did not cite any decisions from the Ninth Circuit in support of its overruling of *Bell*. Indeed, the Seventh Circuit pointed out that a Ninth Circuit decision, *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985) , had held contrary to the other circuits in finding that parents had a constitutionally protected interest in the companionship of their 14 year old son, and stated a claim under §1983 against school officials after he committed suicide while at school. *Russ*, 441 F.3d at 787-88. See also *Robertson*, 420 F.3d at 1258, n. 4, in which the Eleventh Circuit observed that "Ninth Circuit decisions have interpreted their case law as allowing a parent to bring a companionship claim in the context of an adult

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-    18**

1    child where the deprivation was incidental to the state action."

2         The development of Ninth Circuit precedent that parents are entitled to bring

3    a companionship claims in the context of an adult child where the deprivation was

4    incidental to the state action has, to say the least, not come about directly and

5    explicitly, nor has it been supported by any extensive and rigorous analysis.

6    *Kelson* did not involve an adult child, but rather a minor child.  Subsequently, in

7    *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986), the Ninth Circuit

8    allowed the parents of a 22 year old who had hung himself in jail to proceed with a

9    §1983 claim based on the Fourteenth Amendment for loss of companionship and

10   society of their son.  As the Eleventh Circuit observed in *Robertson*, however:

> [I]t does not appear that *Strandberg* actually extended
> the holding of *Kelson* to include adult children.  In
> *Strandberg*, the court's action regarding the parents'
> claim of a due process violation was limited to correcting
> the parents' incorrect belief that the district court had
> dismissed their claim. [Citation omitted].  Thus, the
> *Strandberg* court did not address whether the asserted
> right existed.

15   420 F.3d at 1258, n. 4, citing *Strandberg*, 791 F.2d at 748 & n. 1.

16        In *Curnow v. Ridgecrest Police, et al.*, 952 F.2d 321, 325 (9th Cir. 1991), the

17   Ninth Circuit, with the undersigned sitting by designation and authoring the

18   panel's opinion, found a district court had not erred in refusing to dismiss a §1983

19   action under the Fourteenth Amendment brought by parents seeking to recover for

20   the loss of companionship and society of their adult child who had been shot and

21   killed by police.  *Kelson* and *Strandberg* were cited in support of that finding, as

22   was *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987).

23        In *Smith*, children, including adult children, asserted a Fourteenth

24   Amendment liberty interest in the companionship and society of their father who

25   was killed by police.  The Ninth Circuit noted that when a child claims

26   constitutional protection for her relationship with a parent, no custodial interest is

27   implicated, but only a companionship interest.  In finding that this companionship

**ORDER GRANTING SUMMARY
JUDGMENT, IN PART, *INTER ALIA*-    19**

interest warranted constitutional protection, the court relied on *Strandberg*, explaining that decision as follows:

> The parents' interest in directing the upbringing of their son was not implicated because the son was twenty-two years old and no longer a minor; the parents therefore "had not been deprived of any constitutional *right to parent*. [791 F.2d] at 748 n.1 (emphasis added). However, the parents were able to "claim a violation of their fourteenth amendment due process rights in the companionship and society of the decedent." [791 F.2d] at 748. Thus, the familial relationship, and not the more narrow custodial interest of the parents, gave rise to the due process action. *See also Bell*, 746 F.2d at 1245 (parent can assert personal due process claim for death of adult child because the "Supreme Court's decisions protect more than the custody dimension of the parent-child relationship") . . . .

*Id*. at 1418.

Since *Curnow*, the Ninth Circuit has consistently recognized that its precedent recognizes a Fourteenth Amendment liberty interest of parents in the companionship and society of their adult children, even when the deprivation of that interest is incidental to the state action. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 685-86 (9th Cir. 2001) (citing *Kelson*); *Moreland v. Las Vegas Metro Police Dept.*, 159 F.3d 365, 371 (9th Cir. 1998) (citing *Curnow*); *Byrd v. Guess*, 137 F.3d 1126, 1134 (9th Cir. 1998)(citing *Curnow*); and *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1992).

In *Ward*, the Ninth Circuit acknowledged the Tenth Circuit's holding in *Trujillo* that although a mother and sister had a constitutional liberty interest in the companionship and society of the decedent, they needed to prove a wrongful intent specifically directed at them before they were entitled to recover. The Ninth Circuit, however, adopted what it labeled as the "earlier and better rule of *Bell*," refusing to impose *Trujillo's* limitation requiring proof of specific intent to interfere with the family relationship (i.e., parent-child relationship). The Ninth

**ORDER GRANTING SUMMARY JUDGMENT, IN PART,** *INTER ALIA*- **20**

1  Circuit indicated that *Bell* was consistent with its decision in *Smith*, and that neither
2  *Bell* or *Smith* had imposed the limitation set forth in *Trujillo*.  967 F.2d at 283-84.

3

4      The development of this precedent in the Ninth Circuit, even be it
5  inadvertent and/or not particularly well thought out under Supreme Court
6  precedent, is nonetheless binding authority upon this district court.  As persuasive
7  as the rationale and holding of the Seventh Circuit in *Russ* may be in overruling
8  *Bell*, it is the Ninth Circuit, not this court, which must decide whether the Ninth
9  Circuit will now follow *Russ*.

10     Based on current Ninth Circuit authority, Debra Rentz and William Rentz,
11 are entitled to assert Fourteenth Amendment substantive due process causes of
12 action seeking to vindicate their constitutional rights for loss of companionship
13 with their adult son.

14

15     **2.  Decedent's Siblings**
16     The Ninth Circuit has held that a sibling does not possess a constitutionally
17 protected liberty interest in the companionship of another sibling.  "Neither the
18 legislative history nor Supreme Court precedent supports an interest for siblings
19 consonant with that recognized for parents and children."  *Ward*, 967 F.2d at 284,
20 citing *Bell*, 746 F.2d at 1248.  According to *Bell*:

21          [I]f we were to hold that the federal Constitution entitles
           the siblings to recover for loss of society and companion-
22         ship, there could be no principled way of limiting such
           a holding to the immediate family or perhaps even to blood
23         relationships.  Obviously many human relationships stem
           from the "emotional attachments that derive from the
24         intimacy of daily association," but we are unwilling to
           attach constitutional significance to such attachments out-
25         side the closely guarded parent-child relationship.

26 746 F.2d at 1247.
27     Billie Rentz and Thomas Gregg cannot, in their individual capacities,
28 proceed on Fourteenth Amendment substantive due process causes of action

**ORDER GRANTING SUMMARY**
**JUDGMENT, IN PART, *INTER ALIA*-    21**

because they have no constitutionally protected liberty interest in the companionship of their brother.

**D. Conclusion**

Defendants' Motion For Partial Summary Judgment (Ct. Rec. 47) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Summary judgment is **GRANTED** to defendants on any wrongful death and survival causes of action brought under Washington State law because there is no dispute that the parents and siblings of the decedent were not financially dependent on the decedent at the time of his death, such dependency being a requirement of Washington State law.[12]

(2) Summary judgment is **GRANTED** to defendants on the wrongful death causes of action brought under 42 U.S.C. §1983 for the benefit of Billie Rentz and Thomas Gregg.

Summary judgment is **DENIED** as to the wrongful death causes of action brought under 42 U.S.C. §1983 for the benefit of Debra Rentz and William Rentz.

Debra Rentz and Billie Rentz, as co-personal representatives of the Estate of Christopher L. Rentz, are entitled to proceed with survival causes of action under §1983, borrowing Washington's survival statutes.

(3) Summary judgment is **DENIED** as to the  Fourteenth Amendment substantive due process causes of action asserted by Debra Rentz and William Rentz to vindicate their own constitutional rights to society and companionship of their adult son.

---

[12] William Rentz has individually asserted common law causes of action for outrage and negligent infliction of emotional distress, but those are distinct from the wrongful death cause of action.  These common law causes of action are premised on a duty owed by defendants to William Rentz, not a duty owed by defendants to the decedent.

**ORDER GRANTING SUMMARY JUDGMENT, IN PART, *INTER ALIA*-   22**

1    (4) Summary judgment is **GRANTED** to defendants on the Fourteenth

2  Amendment substantive due process causes of action asserted by Billie Rentz and

3  Thomas Gregg because they do not have constitutional rights to companionship

4  and society of their brother.

5    **IT IS SO ORDERED**.  The District Executive is directed to enter this order

6  and forward copies to counsel of record.

7    **DATED** this_____27th_____of June, 2006.

8

9    _s/ Alan A. McDonald_____
      ALAN A. McDONALD
10      Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER GRANTING SUMMARY
JUDGMENT, IN PART, *INTER ALIA*-    23**